Janet BORISCH, Plaintiff,

v.

TREAT ALL METALS, INC., et al., Defendants.

Janet BORISCH, Plaintiff,

v.

MILWAUKEE GEAR CO., et al., Defendants.

Nos. 97–C–632, 97–C–633.

United States District Court, E.D. Wisconsin.

Sept. 9, 1998.

Franklyn M. Gimbel, Milwaukee, WI, for Plaintiff.

Richard P. Carr, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Janet Borisch claims she is entitled to survivor annuity benefits under the terms of the retirement and savings plans of Treat All Metals, Inc., and Milwaukee Gear Company, two businesses owned by her late husband E. Jack Borisch until his voluntary employment termination in 1989. In May 1997, the plaintiff filed separate actions against the businesses and the two retirement and savings plans ("the Plans") and against her husband's estate, under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants filed 12(b)(6) motions to dismiss and moved to consolidate the two cases in August 1997. *See* Fed.R.Civ.P. 12(b)(6). Borisch requested leave to file an amended complaint in September 1997, and shortly thereafter defendants filed renewed motions to dismiss. In November 1997, the cases were consolidated.

Noting this procedural history, the court now grants plaintiff's motion to file an amended complaint and denies the original

motions to dismiss as moot. Currently before me, then, are defendants' renewed motions to dismiss based on the amended complaint, which are identically briefed and will be treated as a single motion in this consolidated action. As the briefing for the renewed motion refers to arguments made in and exhibits attached to the original briefing, these earlier-filed materials will be considered incorporated in the current motion papers.

## I. FACTUAL BACKGROUND

E. Jack Borisch was the owner and principal of the two companies funding the Plans until his voluntary termination in 1989. As an employee participant, Borisch had a vested interest in certain retirement benefits, payable under the terms of the two Plans, which appear to be identical for all relevant purposes. Borisch's first wife died in 1992, and in April 1993 Borisch and the plaintiff were married. Before marrying, Jack and Janet Borisch signed a prenuptial agreement dealing in part with "income derived from ... pension and retirement benefits, profit-sharing and savings plan benefits, annuities..." Def.'s Ex. 1 at 4. The prenuptial contract also indicated that each party would execute any additional documents necessary "to carry the intention of this Agreement into effect." *Id.* at 13.

In September 1993, plaintiff signed a Spouse's Consent to Designation of Beneficiary for both the Plans, designating her husband's son, Peter L. Borisch, as his primary beneficiary. The consent form signed by plaintiff states that she understood she was giving up her rights to plan benefits under state and federal law. Plaintiff signed a similar consent form in April 1994, again naming Peter Borisch as the primary beneficiary under the Plans.

Jack Borisch died in May 1995, without having requested or received retirement benefits from his plan accounts. In September 1996, plaintiff formally requested her late husband's retirement benefits under the Plans in the form of a survivor annuity with payments for life. The plan administrator rejected plaintiff's claim as to both Plans by letters of Sept. 17, 1996 and Oct. 4, 1996, each asserting that "[t]he language [of the Plan] is quite clear that in the event Ms.

Borisch waived her interest in Jack's retirement benefits, those benefits would be paid to his designated beneficiary, which in this case is not Ms. Borisch." Def.'s Ex. 3 at 2.

Plaintiff alleges that the terms of the Plans in fact require the plan defendants to pay her benefits in the form of a qualified joint and survivor lifetime annuity. Instead, she claims, the defendants unlawfully paid a death benefit to Peter Borisch. She further alleges that she never executed a timely written waiver of her right to these benefits because her signature on the consent form was fraudulently obtained.

Janet Borisch filed this federal ERISA action seeking the benefits allegedly denied to her. The amended complaint states two causes of action. The first is denominated as breach of fiduciary duty, or failure to administer the plans in accordance with their terms, and cites 29 U.S.C. § 1132(a)(1)(B) and (a)(3)(A), as well as 29 U.S.C. § 1104. The second cause of action is a supplemental state law claim of fraudulent misrepresentation and is directed against defendant George A. Wilson, personal representative of the estate of Jack Borisch.

## II. ANALYSIS

In reviewing a complaint pursuant to any motion to dismiss, I assume all well-pleaded facts to be true, and draw all reasonable inferences from those facts in favor of the plaintiff. *Gutierrez v. Peters,* 111 F.3d 1364, 1368–69 (7th Cir.1997). This court will dismiss an action pursuant to a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted if, under this generous standard, the plaintiff can prove no set of facts that would entitle her to relief. *See* Fed.R.Civ.P. 12(b)(6); *General Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. Count I—Entitlement to Survivor Annuity

Defendants essentially argue that the plaintiff has improperly pled her first cause of action, and therefore it should be dismissed. The amended complaint erroneously

characterizes plaintiff's first claim as one for breach of fiduciary duties as set forth in 29 U.S.C. § 1104. Section 1109 of ERISA creates liability for a breach of these duties, and while a participant plaintiff may bring an action under this section, she cannot recover equitable or remedial relief in her individual capacity. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140–44, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

Plaintiff's first cause of action also cites ERISA's civil enforcement provisions, specifically 29 U.S.C. § 1132(a)(1)(B) and (a)(3)(A). Subsection (a)(1)(B) allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, or to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This is the ERISA provision under which the vast majority of participant denial of benefits suits are brought and is a perfectly adequate basis for plaintiff's present claims against the Plans.

■ Plaintiff also invokes 29 U.S.C. § 1132(a)(3), which allows a participant or beneficiary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" and "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(A) & (B). Plaintiff concedes that she is not seeking equitable relief, *see* Pl.'s Br. at 3, but nevertheless seeks to enjoin the defendants from violating the terms of the Plans under this section by their refusal to pay her the annuities to which she believes she is entitled. As defendants correctly point out, the Supreme Court considered the "overall structure" of § 1132 and concluded that subsection (a)(3) is a "catch-all" provision designed to act as a safety net, "offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 1077–78, 134 L.Ed.2d 130 (1996). Since plaintiff clearly has a cause of action for denial of benefits under § 1132(a)(1)(B), proceeding under § 1132(a)(3) is not only impermissible, but unnecessary. *Id.* at 1079.

■ By the same token, defendants' argument that plaintiff's first claim should be dismissed is clearly inconsistent with the liberal notice pleading philosophy underlying the Federal Rules of Civil Procedure. Under Rule 8, a complaint sufficiently raises a claim even if it points to the wrong legal theory or if it points to no legal theory whatsoever, as long as relief is possible under any set of facts consistent with the pleaded allegations. Fed.R.Civ.P. 8(a); *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1134 (7th Cir.1992). Under this standard, plaintiff has more than adequately raised a claim for denial of benefits under § 1132(a)(1)(B); I see no reason to dismiss Count I at this time.

Defendants suggest that if the first cause of action is one for denial of benefits under (a)(1)(B), as it clearly is, then the court should remand this matter to the plan administrator so that administrative remedies can be properly exhausted. However, the record before me establishes that the plan administrator has already considered and rejected substantially the same claim for benefits which plaintiff brings to this court. *See, e.g.,* Def.'s Ex. 3 at 2. Remand is therefore unnecessary.

## B. Count II—Fraudulent Misrepresentation

■ In her second claim, a supplemental state law claim of fraudulent misrepresentation, plaintiff alleges that Jack Borisch deceived her about the consequences of the consent form she signed in 1993, designating his son Peter Borisch as primary beneficiary of his retirement benefits. The amended complaint does not specifically mention the similar consent form allegedly signed by plaintiff in 1994. Plaintiff alleges that at no time was she informed that the 1993 consent form would serve to relinquish her rights to benefits under the Plans. According to plaintiff, Borisch told her that the consent form would only relinquish her stock rights in his companies. She further alleges that Borisch refused to provide her with a copy of the consent form after she signed it. She claims that her husband knew his representations were false, and he intentionally misled her. Finally, she claims that she relied on Borisch's representations when she signed the consent form.

■ Defendants argue that this claim is barred by ERISA's preemption clause, 29 U.S.C. § 1144(a). Section 1144(a) states that ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The breadth of this provision has been reaffirmed repeatedly; ERISA preempts any effort to use state law, including state common law, to obtain benefits under an ERISA plan. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

Plaintiff argues that her fraudulent misrepresentation claim does not "relate to" the Plans within the meaning of § 1144(a). She asserts that the Plans *per se* are not the subject of this claim, but rather the claim is directed at the estate of her late husband. The Plans are implicated, she argues, only as they help in fixing damages for potential plan benefits allegedly denied to her through fraud. But the plaintiff's interpretation of "relates to" is at odds with established precedent. A claim "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or refers to such a plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

The factual basis of plaintiff's claim for fraudulent misrepresentation—the alleged invalidity of a spousal consent to designation of beneficiary—is clearly connected to the Plans and even referred to therein. *See* Pl.'s Ex. A at § 8.4—Designation of Beneficiary. ERISA itself also sets forth specific requirements for establishing valid spousal consent. *See* 29 U.S.C. § 1055(c)(2)(A). It simply cannot be maintained that a claim which fundamentally challenges the validity of plaintiff's consent to designate a primary beneficiary other than herself does not "relate to" the Plans. Calling it a claim for fraudulent misrepresentation and suing her husband's estate do not change the fact that plaintiff is still seeking benefits under the Plans. As the Seventh Circuit noted, "[this type of end run is regularly rebuffed.]" *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir.1992); *see also Miller v. Taylor Insulation Co.*, 39 F.3d 755, 758 (7th Cir. 1994) ("[A] plaintiff cannot be permitted to thwart Congress's decision to preempt state laws relating to pension and welfare plans by naming additional defendants besides those suable under ERISA.")

■ However, although ERISA preempts plaintiff's misrepresentation claim, the circumstances surrounding plaintiff's spousal consent may still be relevant to this action. *See, e.g., Butler v. Encyclopedia Brittanica, Inc.*, 41 F.3d 285, 292–95 (7th Cir.1994) (considering the validity of a spousal consent form in an ERISA denial of benefits action). That ERISA preempts state law does not mean that all common law concepts are automatically inapplicable in the ERISA context. *Pilot Life* at 56, 107 S.Ct. 1549; *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir.1993). On the contrary, Congress expected courts to develop a federal common law of rights and obligations under ERISA-regulated plans. *Id.* If it appears that ERISA itself does not expressly address the issue before the court, common law principles may fill the gaps, provided their use is consistent with the objectives of the federal statute. *Id.; see also Black v. TIC Investment Corp.*, 900 F.2d 112, 114 (7th Cir.1990).

With respect to spousal consent, ERISA clearly reflects a concern that any waiver of benefits by a spouse be "knowing and considered." *Pedro Enterprises, Inc. v. Perdue*, 998 F.2d 491, 494 (7th Cir.1993). To this end, the statute requires that if another beneficiary is elected

(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent . . ., and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.

29 U.S.C. § 1055(c)(2)(A). Whether Janet Borisch's signing of the relevant consent forms met these basic ERISA requirements and, ultimately, was "knowing and considered" is not a question directly before the court at this time. The parties are free to dispute this question and to consider the applicability of equitable common law principles—such as estoppel, waiver, and reasonable or negligent reliance—under these facts.

*See Thomason,* 9 F.3d 645; *Owen v. Wangerin,* 985 F.2d 312 (7th Cir.1993).

## C. Relevance of Antenuptial Agreement

 Defendants also argue that plaintiff's entire action is barred by the "tender back" doctrine, arising out of the antenuptial agreement signed by Jack and Janet Borisch in 1993. Defendants claim that through the prenuptial agreement plaintiff explicitly gave up her right to Jack Borisch's pension and retirement benefits, in exchange for "'marital support,' mortgage payments, medical insurance and repayment of personal loan obligations." Def.Br. at 12. Defendants characterize plaintiff's present action as a "rescission" of the antenuptial agreement and argue that general contract law principles dictate that Janet Borisch should refund the "consideration" for the agreement, or tender back a sum of $570,000.

There are a number of problems with defendants' argument in this regard, the most salient of which is that ERISA preempts the antenuptial agreement insofar as it impacts the disposition of benefits under the Plans. Having made the preemption argument successfully on plaintiff's state law claim, defendants cannot escape its logic here. To the extent that the antenuptial contract purports to affect the designation of beneficiaries, it clearly "relate[s] to" the Plans. 29 U.S.C. § 1144(a). ERISA's broad preemptive scope was designed to avert precisely the problem which defendants raise—the inefficiency of obligating plan administrators to consult a "patchwork scheme" of potentially conflicting or inconsistent state laws when administering plan benefits. *See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 8–11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). For example, in considering the relevancy of a decedent's will and Illinois testamentary transfer law to the designation of beneficiaries under an ERISA plan, the Seventh Circuit held that the state law was preempted by ERISA.

> Applying state testamentary transfer law to determine the beneficiary under the terms of the decedent's will would not only relate to the Plan, but would interfere with the administration of the Plan and violate its terms. When, as here, the terms of an employee pension plan under ERISA provide a valid method for determining the

beneficiary, that mechanism cannot be displaced by the provisions of a will.

*MacLean v. Ford Motor Co.,* 831 F.2d 723, 728 (7th Cir.1987). *See also Riordan v. Commonwealth Edison Co.,* 953 F.Supp. 952 (N.D.Ill.1996) (finding that word "irrevocable," typed on prior beneficiary designation form, was not grafted onto the terms of the ERISA plan by virtue of Illinois contract law).

Similarly, the antenuptial agreement in this case and the general contract law principles which supposedly bar plaintiff's present attempt to claim benefits cannot directly displace the terms of the Plans in determining the proper beneficiary. *See also Mattei v. Mattei,* 126 F.3d 794, 796 n. 2 (6th Cir.1997) ("For the plan administrator to distribute the benefits to the beneficiary designated under the Plan, rather than in keeping with the antenuptial contract, was consistent with the law of this and other circuits.") Although ERISA is silent on the effect of antenuptial agreements in general, arguably justifying the application of state law, the federal statute plainly sets forth the requirements for a valid spousal waiver of benefits. *See* 29 U.S.C. § 1055. As with the spousal consent forms, what is really at stake here is this: did Janet Borisch waive her right to benefits under the Plans when she signed the antenuptial agreement?

In *Hurwitz v. Sher,* 982 F.2d 778 (2d Cir. 1992), a factually quite similar case, the Second Circuit considered an alleged waiver of benefits in an antenuptial agreement in light of the spousal waiver requirements in § 1055(c)(2)(A). Finding that the agreement did not satisfy the unambiguous statutory requirements, the *Hurwitz* court rejected the equitable argument that the clear intention of the married parties was to waive benefits and that the surviving spouse "should be forced to conform to the terms of the antenuptial agreement." *Id.* at 783. The Seventh Circuit has implied that *Hurwitz* is the correct approach to analyzing antenuptial agreements under ERISA. *See Pedro Enterprises* at 494 ("[A]ntenuptial agreements lacking ERISA waiver requirements do not constitute effective waivers.")

Again, the parties do not address the significance of the Borisch antenuptial agreement in light of ERISA waiver requirements. Unless defendants can establish that the agreement is a valid spousal waiver, ERISA precludes the use of state contract law principles to affect the rights of beneficiaries through antenuptial contracts.[1] Additionally, although the prenuptial may still have relevance in this action—particularly in shedding light on the circumstances surrounding the subsequent spousal consent forms—I am not persuaded that concepts like "rescission" and "consideration" are meaningful or useful in the context of an antenuptial agreement, presumably entered into by parties with complex motives and opaque emotional investments. In support of their "tender back" theory, defendants have produced no cases whose facts even remotely resemble the case at hand. Finally, even if equity suggests that plaintiff should not keep the fruits of the antenuptial contract if she also receives benefits under the Plans, the "tender back" scenario is at least premature at this stage. Merely by bringing these claims, plaintiff is under no obligation to refund some portion of her assets to Jack Borisch's estate.

Based on the foregoing discussion,

**IT IS HEREBY ORDERED** that plaintiff's motion to file an amended complaint is **GRANTED,** and defendants' original motions to dismiss are **DENIED** as **MOOT.**

**IT IS FURTHER ORDERED** that defendants' renewed motions to dismiss are **DE-NIED** as to plaintiff's first claim for relief, but **GRANTED** as to plaintiff's second claim for relief.

---

**1.** The prenuptial contract in this case also cannot be characterized as a "qualified domestic relations order" under 29 U.S.C. § 1144(b)(7) and § 1056(d)(3), and therefore does not fall within this exception to ERISA preemption doctrine. *See Metropolitan Life Ins. Co. v. Wheaton,* 42 F.3d 1080 (7th Cir.1994).